And now we'll turn to United States v. Schurig. And, again, we have Ms. Leffler for the appellee. And for the appellant, Schurig, we have Mary Geddes. Okay, welcome. Welcome to Seattle, Ms. Geddes. Nice to see you again, too. Thank you. Nice to see you again, too. Good morning. It's my pleasure to represent Samuel Schurig. The question presented here is whether or not the court's order of $42,000 in restitution, whether or not that was an actual loss caused to Phyllis Carter directly and approximately by the defendant's crime, which was, in this case, making a false statement in order to obtain a lower-rate loan through a HUD-insured program. In this case, our position has been, and what we're here to talk about, is that there wasn't that direct and proximate connection between the defendant's act of saying that he intended to live in the property he was purchasing and the $42,000 that was ultimately ordered by the court. The court really failed to engage in a causation analysis for the purposes of determining that loss. What it found was that Phyllis Carter, as the person whose property was purchased through the loan, had determined after the time of the transfer of the property that she would provide approximately $42,000 to Mr. Schurig for the payment of his cost. So he, of course, asserted that he was – it was all reimbursement for a cost that he had in preference to him. That's one way to characterize it. But if we characterize it starting where the judge started, that this is a – that Mrs. Carter is not only a victim, she's a vulnerable victim because her doctor is doping her up while he's having an affair with her. And the doctor concocts a plan where he's going to take her property, borrow money on it, get the proceeds, and then he's not really going to keep the property. We know that. You say it's a sale. It's only a phony sale. He's going to take the property long enough to get some money out of it, which allegedly goes to her. He'll then skim off the money, and then the property goes back to her. So in effect, the real victim in this case is not even the government or HUD. The real victim is he has extracted a portion of the principal value of her property and put it in his pocket. And it's an absolute necessity in order to get that loan that she be vulnerable victim be put upon and put into this loop so that he can get the money by pretending to buy the property. It sounds to me like those facts are inextricably bound up with the loan fraud. Now, that's what a court could say, at least, in terms of deciding this case. And that's what the district judge, if one reads between the lines, did say. Now, you can characterize it otherwise, but tell me why that's wrong. Well, the Court's analysis was with respect to finding her vulnerable victim, which was not the subject of appeal, nor could it be under the plea agreement. That determination was made with respect to relevant conduct. In any event, she's a vulnerable victim. She's a vulnerable victim one day and not vulnerable the next. She's a vulnerable victim. And she's a vulnerable victim because this guy is, against all medical ethics, having an affair with her and, by the same time, doping her up all the time. I mean, that's what the Court said. Now, that may not be true. I understand he's not necessarily the biggest monster in the world and there are lots of things that happen in life that look worse on paper than they were. But that's what the Court found. Judge Fernandez, what the Court did was it bootstrapped its determination on the defendant's relevant conduct into a restitution order. And that's why it's wrong, because essentially what the Court did was it made a determination that she was a vulnerable victim in the context of relevant conduct. But there's a different analysis that the Court has to engage in. But that's your causation nexus. That's why it's – that's why vulnerable victim has something to do with it, because that's – you're saying there's no causation, that the underlying facts of his crime are not wrapped up in what happened to the victim. But they are, and that's one of the reasons. He made a false statement for the purposes of getting a loan. The loan was in the amount of $117,000. He is liable for that loan, whether or not it's going to be the result of foreclosure on the property or whether or not he's going to be independently civilly liable if they can't execute or won't execute on the property. That liability remains. But as to what happened between the two of them, basically this is extremely attenuated. It's attenuated temporally as well as factually because she received the full price for the property as a result of the transaction. Now, she may have been made more amenable, and Judge Singleton said that, more amenable to going through this entire financial transaction as a result of her relationship and as a result of her abuse of drugs, which were prescribed by him, of course, as you've noted. Nevertheless, the record shows that she is the person to whom the proceeds of the loan were disbursed, and she made a decision, even herself going in and making payments on his behalf, to go ahead and subsequently loan him money that she had received as a result of the loan. That's an attenuated connection, and I'd ask the Court to consider the cases as discussed in Meeksian, including the Tyler case, which talks about basically instances in which there isn't a direct cause. This is far afield to find him both liable for the loan, but also liable for effectively not paying her back. That's how she characterized it, that she loaned him the money and he failed to pay her back a year and a half, basically, within a year and a half of her making the loan. That's why it's an attenuated connection and not a direct and proximately caused one. I'm going to save the rest of my time for rebuttal. Thank you. Thank you. Okay. Ms. Loeffler. Your Honor, I really, the position is really as Judge Fernandez has mentioned it. The question here was a causation question, and the loss was clearly foreseeable and the likely risk. If what happens is he feeds her drugs and she is sort of zoned out on drugs, as Judge Singleton said, it may not be because she wouldn't have signed them. It may be because she was too doped up to sign them. But the risk was she pledges her house for a loan. From the beginning, some of the money is to go to him. And it's all inextricably wound up with the fraud. It was a fraudulent loan obtained to give him some money because he had some debts. And she had no reason to want to change the lien on her house from a 350-month payment to a $1,300-month payment. The causation analysis I just, and I've cited plenty in my brief, but although it's not factually similar, I don't think you can separate the causation analysis. In that case where somebody mailed a threatening letter and they said L.A. Hazmat and the health department were all impacted, here it's even much more directly connected. If the Court has any questions for me, I'm happy to answer them. Otherwise, I would rely on my brief. Thank you. Judge Fernandez, no questions? Thank you very much. We have no questions. Thank you. Ms. Keddy. As Ms. Leffler indicated, Judge Singleton did not doubt the fact that Phyllis Carter herself testified she was present at the closing. She did execute documents there. She intended for the sale to go through. She knowingly anticipated the sale of the property, the transfer of the title, although she wanted a wrap-back to her ultimately. And that, in fact, was achieved. Phyllis Carter herself was the beneficiary of the transfer of property as was accomplished through this application. She paid off a $20,000 note. She was able to loan her friend Samuel Shurick money that he needed. She provided herself with $40,000 in cash. And she has retained legal title as well as physical possession of her property from which she's not been forced, nor has she been making any payments with respect to a mortgage or any kind of use of that property since 2001. That is why this is an attenuated kind of matter which does not amount to direct and proximate cause, because she made a decision to loan her friend the money. She may have been susceptible to that because of her dependence on drugs and because of her romantic relationship, but she made that decision. He did not interfere with her possession, her receipt, her enjoyment of the $117,000 that she received as a purchase price for that property. Nor is she standing in the position of being a true victim of the actual act of conviction. This is not a scheme that's being alleged here or a conspiracy. It is strictly the act of false statement that the Court has to consider when considering causation as linked to that specific crime and not to a larger scheme or fraud which would allow for this kind of far-reaching and less directly connected order of restitution. Unless the panel has any other questions. Thank you. No questions. And we thank you both for your long travels to educate us here today. Thank you.
judges: Goodwin, Fernandez, Gould